IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| EMA ELECTROMECHANICS, INC.,<br>Plaintiff, | § § § | |
| v. | § § | 6:21-CV-00206-ADA |
| SIEMENS CORPORATION and<br>SIEMENS INDUSTRY, INC.,<br>Defendants. | § § § § | |

### ORDER HOLDING-IN-ABEYANCE DEFENDANTS' MOTION TO DISMISS [ECF NO. 14]

Came on for consideration this date is Defendants' Motion to Dismiss. ECF No. 14. In the Motion, Defendants moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).[1] *Id.* The Parties agreed to bifurcate the Motion to Dismiss and first address the lack of standing grounds asserted under Rule 12(b)(1). ECF No. 17 at 1 n.1. Plaintiffs will address the other grounds for dismissal after completing venue discovery. *Id.*

Plaintiff filed its opposition to the Defendants' challenge under Rule 12(b)(1) on June 7, 2021, ECF No. 17, to which Defendants replied on June 14, 2021, ECF No. 19. The Court held a hearing on this issue on September 28, 2021. ECF No. 38. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **HOLDS IN ABEYANCE** Defendants' Motion to Dismiss as to the grounds for dismissal under Rule 12(b)(1). The Court does not reach Defendants' Motion to Dismiss on Rule 12(b)(2) or 12(b)(6) grounds as those issues are not yet ripe for resolution.

---

[1] Only Siemens Corporation is challenging venue under Rule 12(b)(2).

## I. INTRODUCTION

Siemens Corporation and Siemens Industry, Inc. (collectively "Siemens" or "Defendants") filed a Motion to Dismiss accusing EMA Electromechanics, Inc. ("EMA" or "Plaintiff") of lacking constitutional standing to assert patent infringement of U.S. Patent No. 7,724,489 (the "'489 patent"). Patent plaintiffs who have no rights in a patent "lack constitutional standing." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341 (Fed. Cir. 2007). According to Siemens, it is EMA Electromecanica S.A. ("EMA S.A.") that owns the '489 patent, not EMA. ECF No. 14 at 1. Siemens alleges that EMA S.A.'s purported attempt to assign the '489 patent to Logan Knapp (who subsequently assigned it to EMA) was deficient, breaking EMA's chain of title to the '489 patent. The Court determines as a matter of law that the assignment to Mr. Knapp is facially ambiguous as to the property conveyed through the assignment. The Court may consider extrinsic evidence to resolve this ambiguity, but will only do so after the Parties are permitted limited discovery and an evidentiary hearing.

## II. BACKGROUND

EMA filed suit against Siemens on March 4, 2021, accusing certain Siemens circuit breaker products of infringing the '489 patent. ECF No. 1 at 1–4. Eduardo Montich, the sole named inventor of the '489 patent, filed the '489 patent with the U.S. Patent and Trademark Office ("USPTO") as U.S. Patent Application No. 11/840,948 (the "'948 application") on August 18, 2007. The USPTO granted the '489 patent on May 25, 2010. EMA states that it came into possession of all rights, title, and interest in the '489 through a chain of four assignments, identified below. *See* ECF No. 17 at 3–5.

**First Assignment:** In the First Assignment (dated August 14, 2007), Mr. Montich assigned his rights to the invention and any patents obtained from the '948 application to EMA Electromecanica S.A. ("EMA S.A."), which is in Argentina. ECF No. 14-1.

2

In August 2008, EMA S.A.'s U.S. attorneys filed an international patent application, PCT/US2008/073412 (the "'412 international application"), in the U.S. Receiving Office claiming priority to the earlier filed '948 application.[2] EMA S.A.'s attorneys failed, however, to name a U.S. resident as the Applicant, resulting in the U.S. Receiving Office issuing an "Invitation to Correct the Purported International Application" to EMA S.A. *See* ECF No. 14-2. In response, EMA S.A.'s U.S. attorneys filed a corrected PCT Request naming Logan Knapp, a U.S. citizen, as the Applicant, and represented that Mr. Knapp is the "owner of the international patent rights to the invention." ECF No. 14-4. That letter is dated October 2, 2008. *Id.*

**Second Assignment**: The Second Assignment, signed on October 3, 2008, provides that Logan Knapp, as "ASSIGNEE," "is desirous of acquiring the entire interest in the PCT Patent Application, to and under said invention" and that "ASSIGNOR [EMA S.A.] hereby sells, assigns and transfers to ASSIGNEE [Logan Knapp] the full and exclusive right, title and interest to said PCT Patent Application." ECF No. 14-5. Yet, the Second Assignment, in the section identifying the "Particulars of the Application," recites the serial number corresponding to the '948 application—not a PCT Patent Application number. *Id.* Indeed, the Second Assignment does not indicate any PCT application number anywhere.

**Third and Fourth Assignment**: In 2010, the '489 patent was granted. On December 16, 2011, Mr. Knapp assigned his purported rights "to said inventions as United States Letter Patent [the '489 patent]" to EMA Electromechanics, LLC, a Texas corporation ("EMA LLC"). ECF No.

---

[2] An international patent application is filed under the Patent Cooperation Treaty and is often referred to as a "PCT application." A PCT application is filed in one of several Receiving Offices spread across the globe. It is not uncommon for a PCT application to claim priority to a patent application from the same country in which the PCT application is filed.

3

14-6. Thereafter, in December 2016, EMA LLC converted into EMA Electromechanics, Inc., and the "Change of Name" assignment was recorded. *See* ECF No. 14-7.

Siemens alleges that the Second Assignment transferred ownership in the '412 international application—not the '489 patent—to Mr. Knapp. Therefore, the Third and Fourth Assignments failed to transfer ownership of the '489 patent to EMA. *See, e.g.*, ECF No. 14 at 5. And, under Siemens's theory, because EMA has no right, title, or interest in the '489 patent, EMA has no Article III standing to sue for infringement of the '489 patent.[3] *Id.*

### III. LEGAL STANDARD

"The burden of demonstrating standing falls to [Plaintiff], as '[i]t is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.'" *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990)).

A motion to dismiss for want of subject matter jurisdiction can take the form of a facial attack on the complaint or a factual attack on the subject matter of the court. "A factual attack on the subject matter jurisdiction of the court . . . challenges the facts on which jurisdiction depends[,] and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe,* 641 F.2d 386, 391 (5th Cir. 1981). Siemens has evidently made a "factual attack," and the Court must therefore resolve factual disputes relating to subject matter jurisdiction:

---

[3] The Court also notes that, after a hearing was held on this Motion, Plaintiff filed a new complaint against Defendants that mirrors the one in this case. *See EMA Electromechanics, Inc . v. Siemens Corp.*, No. 6:21-CV-1001 (W.D. Tex. Sept. 28, 2021), ECF No. 1. EMA added one allegation to this new complaint: "on September 28, 2021, EMA Electromechanica S.A. executed an assignment of the '489 Patent to EMA Electromechanics, Inc. *nunc pro tunc* to October 3, 2008." *Id.* ¶ 9. For purposes of this Motion, the Court will not consider that representation now.

4

> If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.

*Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

"The assignment of a patent's legal title is interpreted in accordance with contract statutes and common law in the state where the assignment took place." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020). The Parties do not dispute that the Second Assignment was made to a Texas resident and should therefore be construed under Texas law. *See* ECF No. 1 at 6; ECF No. 19 at 8.

The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Only if a contract is first determined to be ambiguous may a court consider the parties' subjective interpretation, *see Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981), and admit extraneous evidence to determine the meaning of the instrument, *see R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a written contract can be given a definite or certain legal meaning, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see also Universal CIT. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (Tex. 1951). If a contract is subject to two or more reasonable interpretations, it is ambiguous. *See Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977); *see also Coker*, 650 S.W.2d at 393; *Universal*, 243 S.W.2d at 157. Parol evidence is not admissible to create an ambiguity. *See Universal*, 243 S.W.2d at 157; *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941). Whether a contract is ambiguous is a question of law for

the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *See Coker*, 650 S.W.2d at 394; *R & P Enterprises*, 596 S.W.2d at 518.

To resolve state-law issues, federal courts ordinarily look to the decisions of the relevant state's highest court. *See Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009). If there are no controlling decisions by the highest state court, federal courts must make an "*Erie* guess" as to what the controlling state law would be. "In making an *Erie* guess, [federal courts] defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise, and [they] may consult a variety of sources, including the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 483 (5th Cir. 2008). Here, however, the parties did not cite, and this court did not find, a Texas case addressing similar facts. This Court will, therefore, looks to relevant decisions by courts in other jurisdictions. *See Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 465 (S.D. Tex. 2012).

## IV. ANALYSIS

### A.   Ambiguity in the Second Assignment

The Court determines as a matter of law that the Second Assignment is patently ambiguous. The ambiguity springs from the Second Assignment's description of the object the assignee is desirous of acquiring as "the PCT Patent Application." That term has no clear antecedent basis in the Second Assignment, which refers to only one patent application by number— the '948 application. The Second Assignment identifies the '948 application (which would become the '489 patent) in its "Particular of Application" section and because that is not a PCT application, but a U.S. patent application, it is uncertain what property "the PCT Patent Application" refers to and, accordingly, what property the Second Assignment conveyed. *See Smith v. Allison*, 301 S.W.2d

6

608, 612 (1956) (finding that the contract "under question contains material inconsistent provisions that render it uncertain as to the property conveyed").

The Parties' arguments confirm the presence of ambiguity. *See Greene v. Ab Coaster Holdings, Inc.*, No. 2:10-CV-38, 2012 U.S. Dist. LEXIS 136890, at *18 (S.D. Ohio Sep. 25, 2012) ("Because the Court determines that both interpretations offered by the parties are reasonable, the assignment is ambiguous . . . ."). Siemens asserts that "the PCT Patent Application" refers to a PCT application that the Second Assignment identifies by name but not by number. Siemens places great weight on the clause immediately following "the PCT Patent Application" in the Second Assignment: "to and under said invention." Siemens asserts that this concluding clause refers to the "invention" entitled "CIRCUIT BREAKER WITH HIGH SPEED MECHANICALLY-INTERLOCKED GROUNDING SWITCH" and "for which application for Letters Patent of the United States has been filed on 18 AUG 2007 under Serial No. 11/840948." ECF No. 19 at 7. Meaning that the term "the PCT Patent Application" refers to a PCT application directed to that invention. *Id.*

The Court finds this interpretation to be reasonable but not without its faults. Siemens's argument does not address why the Second Assignment includes a "Particulars of Application" section that—if the Second Assignment meant to assign rights to the PCT application—does not allude to the '412 international application's serial number or at the very least *some* international application. That "Particulars of Application" section instead identifies the '948 application by number. Further, Siemens relies heavily on the phrase "the PCT Patent Application, to and under said invention," to reason that "Mr. Knapp desired to obtain the entire interest in the PCT Application 'to and under said invention.'" ECF No. 19 at 7–8. But Siemens's phrasing omits the comma separating the two relevant clauses, making their combination appear clearer than it does

7

on the Second Assignment. And Siemens does not describe why the phrase "the PCT Application . . . under said invention" has a definite or even coherent meaning roughly corresponding to "the PCT Application directed to the invention referred to above and claiming priority to the U.S. Patent Application referred to above."

EMA asserts that the Second Assignment's use of the term "PCT" is a typographical error and "the PCT Patent Application" refers to the '948 application identified earlier in the Second Assignment. The Court likewise finds this interpretation to be reasonable. And were a trier of fact to resolve the ambiguity in EMA's favor, EMA would have Article III standing in view of the Third and Fourth assignments, the sufficiency of which Defendants do not challenge here.

Though the Court finds EMA's interpretation reasonable, the same cannot be said for all its supporting arguments. For example, EMA's reliance on the Second Assignment's cover sheet is unavailing. ECF No. 17 ¶ 6. The Court agrees with Siemens that the cover sheet is an administrative document used by the USPTO; it is not part of the Second Assignment. *See* ECF No. 19 at 9. Because the scope of a patent assignment requires courts to "look to the agreement between the parties," reference to the '489 application in the cover sheet is irrelevant to what rights EMA S.A. actually assigned. *See Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189-90 (Fed. Cir. 2007); *see also GunVault, Inc. v. Wintrode Enters., Inc.*, No. CV12-01459, 2014 WL 12589336, at *6–7 (C.D. Cal. Feb. 24, 2014) (holding that a patent assignment did not assign a second patent listed on a cover sheet because "[t]he actual assignment does not identify the [second patent]").

In view of the Second Assignment's inconsistent provisions, antecedent basis issues, and reasonable interpretations proffered by both Parties, the Court concludes that the Second Assignment is patently ambiguous. While it is true that "[c]onsideration of the surrounding

circumstances may reinforce the conclusion that the words of a contract are unambiguous or show that they are ambiguous," *RPC, Inc. v. CTMI, LLC*, 606 S.W.3d 469, 485 (Tex. App. 2020); *see also* ECF No. 19 at 4–5, the Court—presented with no authority to the contrary—holds that consideration of surrounding circumstances cannot render a patent ambiguity unambiguous. Accordingly, the Court cannot resolve the Second Assignment's patent ambiguity merely by consulting the circumstances surrounding EMA S.A.'s prosecution of the '412 international application.

### B. The Court's Authority to Resolve Ambiguities

Having identified an ambiguity in the Second Assignment, the Court must determine how to resolve it. Under Texas law, the task of resolving ambiguity through inspection of parol evidence is typically left to the jury. *See, e.g.*, *Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387, 390 (5th Cir. 2000) ("If a contract is ambiguous, 'summary judgment is inappropriate because the interpretation of a contract is a question of fact.'" (citations omitted)); *Lind v. Int'l Paper Co.*, No. A-13-CV-249-DAE, 2014 U.S. Dist. LEXIS 116412, at *12-13 (W.D. Tex. Aug. 21, 2014) ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue for the jury."). But the "jury's role in deciding facts implicating Article III subject-matter jurisdiction, such as whether a plaintiff has standing to sue, is governed by Federal Circuit law." *PerDiemCo, LLC v. Industrack LLC*, No. 2:15-CV-00727-JRG-RSP, 2016 U.S. Dist. LEXIS 151935, at *20–21 (E.D. Tex. Oct. 17, 2016) (citing *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1291 (Fed. Cir. 2008)).

In determining the role of the jury, the Federal Circuit looks "to the degree of intertwinement between the jurisdictional facts and the facts underlying the merits of the cause of action to determine whether dismissal on jurisdictional grounds is appropriate, or whether

9

resolution of the issues must await . . . [a jury] trial on the merits." *DDB Techs.*, 517 F.3d at 1291 (citing *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007)). Interpreting the Second Assignment, "which depends in part on state contract law and in part on [Federal Circuit] law regarding patent assignment clauses, is not so intertwined with the substantive federal patent law governing . . . infringement claims and . . . invalidity counterclaims" such that a court must afford a party a jury trial to resolve the jurisdictional issue. *Id.* Thus, Federal Circuit precedent allows the Court to find any facts regarding ambiguity in the Second Assignment.

The Federal Circuit reached the same conclusion in *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, and further held that the district court erred in denying limited discovery on the jurisdictional issue before ruling on the defendant's Rule 12(b)(1) motion. 517 F.3d 1284, 1291 (Fed. Cir. 2008). With that in mind, the Court will permit the parties limited jurisdictional discovery as to this issue. The Court will then "hold an evidentiary hearing and determine, based on its weighing of the evidence and the witnesses' credibility, whether" the Second Assignment conveyed the '489 patent to Mr. Knapp. *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV 01-10396 MMM (CWx), 2009 U.S. Dist. LEXIS 140929, at *47 (C.D. Cal. July 14, 2009).

## V. CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss is **HELD IN ABEYANCE** as to the grounds of dismissal under Rule 12(b)(1). The Court does not reach Defendants' Rule 12(b)(2) and 12(b)(6) grounds. The Parties are instructed to inform the Court by October 5, 2021 of: a proposed scope of limited discovery to supplement already ongoing venue discovery; and the Parties' availability to hold the evidentiary hearing at the close of the proposed jurisdictional discovery.

SIGNED this 30th day of September, 2021.

                                               _____  
                                               ALAN D ALBRIGHT  
                                               UNITED STATES DISTRICT JUDGE