**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| EMA ELECTROMECHANICS, INC. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | NO. 6:21-CV-206-ADA |
| | § | |
| SIEMENS CORPORATION, AND | § | |
| SIEMENS INDUSTRY, INC. | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.   INTRODUCTION AND BACKGROUND ...................................................................... 1

II.   APPLICABLE LAW ..................................................................................................... 2

    A.   General Claim Construction Principles ............................................................. 2

    B.   Means-Plus-Function Claim Construction Principles ........................................ 3

    C.   Indefiniteness .................................................................................................... 4

III.   DISPUTED TERMS ...................................................................................................... 5

    A.   "an actuating means for moving said mechanical linkage between said first position and said second position" (Claim 2) ...................................................... 5

    B.   "means for moving said actuator arm between a first position in which said second contactor of said first vacuum bottle contacts said first contactor of said first vacuum bottle and a second position in which said first contactor of said second vacuum botle contacts said second contactor of said second vacuum bottle" (Claim 7) ............................................................. 6

    C.   "means for passing power from said power supply to said substation when said actuator arm is in said first position" (Claim 10) .......................................... 9

    D.   "means for mechanically and selectively connecting the contactor of the bus to the contactor of the circuit and for connecting the contactor of the bus to the contactor for the line" (Claim 17) ....................................................... 13

    E.   "said means for connecting the contactor of said bus to the contactor for said line occurring in a time of less than 16 milliseconds" (Claim 20) ............... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*B. Braun Med., Inc. v. Abbott Labs.*,
  124 F.3d 1419 (Fed. Cir. 1997) ........................................................................6, 9

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  296 F.3d 1106 (Fed. Cir. 2002) ....................................................................4, 7, 10

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
  412 F.3d 1291 (Fed. Cir. 2005) ...............................................................3, 6, 9, 11

*Ex parte Lyell*,
  17 USPQ2d 1548 (1990) ................................................................................. 16

*Generation II Orthotics, Inc. v. Med. Tech., Inc.*,
  263 F.3d 1356 (Fed. Cir. 2001) .............................................................................. 7

*GSK Techs. Inc. v. Eaton Elec. Inc.*,
  No. 6:06-cv-358, 2008 WL 906713 (E.D. Tex. Apr. 1, 2008) ....................................4, 7, 10

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005) ..................................................................4, 15, 16

*JVW Enters., Inc. v. Interact Accessories, Inc.*,
  424 F.3d 1324 (Fed. Cir. 2005) ....................................................................3, 7, 10

*In re Katz Interactive Call Processing Patent Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011) ............................................................................ 15

*Masco Corp. v. U.S.*,
  303 F.3d 1316 (Fed. Cir. 2002) ............................................................................. 3

*Maxus Strategic Sys. v. Aqumin LLC*,
  No. 1:11-cv-073, 2014 WL 3348607 (W.D. Tex. July 7, 2014) ...............................4, 7, 10

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  248 F.3d 1303 (Fed. Cir. 2001) ...................................................................3, 11, 12

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
  194 F.3d 1250 (Fed. Cir. 1999) ....................................................................... 7, 10

*Nautilus Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) ......................................................................................... 4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................................... 2, 3

*Rembrandt Data Techs., LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011) ............................................................................. 16

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ............................................................................... 3

*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ............................................................................... 4

*Ultimate-Pointer, L.L.C. v. Nintendo Co.*,
    816 F.3d 816 (Fed. Cir. 2016) ................................................................................. 4

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) .......................................................................... 3, 10

**Statutes**

35 U.S.C. § 112 ................................................................................... 3, 4, 6, 9, 15, 16

**Other Authorities**

MPEP § 2173.05 (1999) ......................................................................................... 16

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. 1 | U.S. Patent No. 7,724,489 ("the '489 Patent") |

Pursuant to the Scheduling Order (Dkt. No. 27) and the Order Governing Proceedings—Patent Case, Defendants Siemens Corporation and Siemens Industry, Inc. (collectively "Siemens" or "Defendants")[1] respectfully submit this Opening Claim Construction Brief.

## I.   INTRODUCTION AND BACKGROUND

Plaintiff asserts all claims of U.S. Patent No. 7,724,489 ("the '489 Patent") against Siemens in this litigation.  The '489 Patent discloses a circuit breaker with an integrated grounding switch that comprises a housing, bushings extending outwardly of the housing, a first vacuum bottle positioned in the housing with a pair of contactors therein, a second vacuum bottle positioned in the housing with a pair of contactors therein, and mechanical linkage movable between a first position and a second position.  *See* Ex. 1 at 4:34-41.  When the mechanical linkage is in the "first position," the contactors in the first vacuum bottle are connected and power is transferred from a power supply through the circuit breaker to a substation. *See id.* at 4:58-63, 4:66-5:15.  By contrast, when the mechanical linkage is in the "second position," the contactors in the second vacuum bottle are connected and the power-supply-side of the circuit breaker is grounded. *See id.* at 4:46-48, 4:60-5:15.  Importantly, when the contactors in one of the first or second vacuum bottles are connected, the contactors in the opposite vacuum bottle are electrically isolated.  *See id.* at 4:46-63, 4:66-5:15.

These "first" and "second" positions are depicted in Figures 5 and 6 of the '489 Patent (annotated below):

---

[1]   As set forth in Siemens Corporation's Rule 12(b)(3) Motion to Dismiss (Dkt. No. 14), venue in this lawsuit is improper as to Siemens Corporation.  As such, Defendants deny that Siemens Corporation is properly named as a party to this lawsuit.  Siemens Corporation participates in this Brief subject to its venue challenge.  Further, both Defendants submit this Brief subject to their Rule 12(b)(1) and 12(b)(6) Motions to Dismiss (Dkt. No. 14).



**FIG. 5**

"First" Position

**FIG. 6**

"Second" Position

The claim construction disputes between the parties fall into two categories: (1) the proper construction of four means-plus-function limitations, and (2) whether claim 20 of the '489 Patent is invalid as indefinite.  As set forth below, each of these disputes should be decided in favor of Siemens.

## II.     APPLICABLE LAW

### A.     General Claim Construction Principles

The words of a patent claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citations omitted). This is the

meaning they would have to a person of ordinary skill in the art in view of the intrinsic evidence, *i.e.*, the claims, the specification, and the prosecution history. *See id.* at 1313. "'The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### B.     Means-Plus-Function Claim Construction Principles

Section 112, paragraph 6 (pre-AIA) provides that a structure may be claimed as a "means…for performing a specified function," and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. U.S.*, 303 F.3d 1316, 1326 (Fed. Cir. 2002). The scope of such "means-plus-function" claims is limited "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015). Construing a means-plus-function limitation is a two-step process. First, courts determine the function of the means-plus-function limitation. *See Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Second, courts determine "the corresponding structure disclosed in the specification and equivalents thereof." *Id.* The structure in the specification is "corresponding" only if "the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* Importantly, the corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005).

Regarding the first step, courts must determine the "function" that is explicitly recited in the claim. *See JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1331 (Fed. Cir. 2005). "It is improper to narrow the scope of the function beyond the claim. It is equally improper to broaden the scope of the claimed function by ignoring clear limitations in the claim language."

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002) (internal citations omitted). Thus, courts generally construe the "function" as it is directly stated in the claim language and reject proposals that omit portions of the function recited in the claim. *See, e.g.*, *Maxus Strategic Sys. v. Aqumin LLC*, No. 1:11-cv-073, 2014 WL 3348607, at *14 (W.D. Tex. July 7, 2014) (adopting "the function as directly stated in the claim language"); *GSK Techs. Inc. v. Eaton Elec. Inc.*, No. 6:06-cv-358, 2008 WL 906713, at *7 (E.D. Tex. Apr. 1, 2008) (rejecting plaintiff's proposed, truncated function and instead adopting the full claim limitation following the recitation of "means for" as the proper function).

### C.    Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. *See* 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim is invalid as indefinite. *See id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *See id.* at 911. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

One example of an indefinite claim is one that recites both a system and a method for using that system. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). Such a claim is indefinite "because 'it is unclear whether infringement ... occurs when one creates a[n infringing] system, or whether infringement occurs when the user actually uses [the system in an infringing manner].'" *Ultimate-Pointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 826 (Fed. Cir. 2016) (alteration in original) (quoting *IPXL*, 430 F.3d at 1384).

## III.    DISPUTED TERMS

### A.    "an actuating means for moving said mechanical linkage between said first position and said second position" (Claim 2)

| Plaintiff's Proposed Construction | Siemens' Proposed Construction |
|---|---|
| **Function:** "moving the mechanical linkage between the first position and the second position"<br><br>**Structure:** latches, springs, magnets, their equivalents, or any combination of them. | **Function:** "moving the mechanical linkage between the first position and the second position"<br><br>**Structure:** an actuator, latches, springs, or magnets, and equivalents thereof. |

The parties agree that this disputed term, and the other disputed terms requiring construction below, are means-plus-function limitations. The parties further agree on the function for this means-plus-function limitation. [2]  The parties dispute, however, the corresponding structure, and specifically whether an "actuator" is part of the structure corresponding to the claimed function. As further set forth below, the specification of the '489 Patent clearly links an "actuator" to the claimed function, so it is corresponding structure that must be included in the proper construction of this limitation.

The parties agree that the corresponding structure for this limitation includes "latches," "springs," and "magnets," as the specification of the '489 Patent clearly links those components to performing the claimed function. *See* Ex. 1 at 7:50-54 ("A variety of techniques can be utilized for moving the actuator arm 120 between the first and second position. For example, latches, springs, magnets, or other devices can be employed so as to instantaneously shift *the actuator arm*

---

[2]       Although the law (noted above and below) requires construction of the "function" in a means-plus-function limitation as it is written in the claim, there is no meaningful difference between the words "the" and "said." To avoid an unnecessary dispute before the Court, Defendants agree to use "the" in place of "said" in the function of this means-plus-function limitation as proposed by Plaintiff.

***120 between the first and second positions*.**") (emphasis added).  Importantly, the specification indicates that the "actuator arm" is part of the claimed "mechanical linkage."  *See id*. at 4:54-56 ("The mechanical linkage comprises an actuator arm…").

Siemens' proposal correctly identifies an "actuator" as additional corresponding structure, as the specification of the '489 Patent clearly links an actuator to performing the claimed function of "moving the mechanical linkage between the first position and the second position."  *See id.* at 4:49-50 ("An actuator serves to move the mechanical linkage between the first position and the second position.").  As a result, an "actuator" is corresponding structure and must be included in the construction of this means-plus-function limitation.  *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) ("[A] means-plus-function claim 'shall be construed to cover the corresponding structure…described in the specification.'") (quoting 35 U.S.C. § 112, paragraph 6); *see also Default Proof*, 412 F.3d at 1298 (explaining that corresponding structure "must include all structure that actually performs the recited function.").

> **B.**     **"means for moving said actuator arm between a first position in which said second contactor of said first vacuum bottle contacts said first contactor of said first vacuum bottle and a second position in which said first contactor of said second vacuum bottle contacts said second contactor of said second vacuum bottle" (Claim 7)**

| Plaintiff's Proposed Construction | Siemens' Proposed Construction |
|---|---|
| **Function:** "moving the actuator arm"<br><br>**Structure:** latches, springs, magnets, their equivalents, or any combination of them. | **Function:** "moving said actuator arm between a first position in which said second contactor of said first vacuum bottle contacts said first contactor of said first vacuum bottle and a second position in which said first contactor of said second vacuum bottle contacts said second contactor of said second vacuum bottle"<br><br>**Structure:** an actuator, latches, springs, or magnets, and equivalents thereof. |

The parties' disputes relating to this means-plus-function limitation are (1) whether the "function" should be defined to match the function recited in the claim, and (2) whether an "actuator" is a structure corresponding to the claimed function.  As set forth below, both disputes should be resolved in favor of Siemens.

With regard to the claimed function, claim 7 of the '489 Patent recites "means for moving said actuator arm between a first position in which said second contactor of said first vacuum bottle contacts said first contactor of said first vacuum bottle and a second position in which said first contactor of said second vacuum bottle contacts said second contactor of said second vacuum bottle."   The law regarding identification of the claimed function in means-plus-function limitations is well-established and requires identification of the function explicitly recited in the claim.  *See, e.g.*, *JVW Enters.*, 424 F.3d at 1331 ("First, a court may not construe a means-plus-function limitation 'by adopting a function different from that explicitly recited in the claim.'" (quoting *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999)); *Cardiac Pacemakers*, 296 F.3d at 1113 ("It is improper to narrow the scope of the function beyond the claim. It is equally improper to broaden the scope of the claimed function by ignoring clear limitations in the claim language." (internal citations omitted)); *Generation II Orthotics, Inc. v. Med. Tech., Inc.*, 263 F.3d 1356, 1364-65 (Fed. Cir. 2001) ("When construing the functional statement in a means-plus-function limitation, we must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim."); *Maxus Strategic Sys.*, 2014 WL 3348607, at *14 (adopting "the function as directly stated in the claim language"); *GSK Techs.*, 2008 WL 906713, at *7 (rejecting plaintiff's proposed, truncated function and instead adopting the full claim limitation following the recitation of "means for" as the proper

function).  There is no reason to depart from this well-established jurisprudence by truncating the claimed function for this particular limitation, as proposed by Plaintiff.

As shown above, the function recited in claim 7 is not merely "moving the actuator arm" in any fashion without a specific result, but rather it is "moving the actuator arm" between two specific positions resulting in specific connections for contactors within the claimed vacuum bottles.  This explicit requirement is omitted in Plaintiff's "short-cite" of the function recited in the claim.[3]  Not only is this an improper function under the controlling authority cited above, but it also could result in the identification of an improper "corresponding structure" from the specification, as the truncated function could have a different corresponding structure from that which is necessary to accomplish the full function of this means-plus-function limitation.  As such, the correct function is that which is explicitly (and fully) recited in the claim, as proposed by Siemens.

With regard to the corresponding structure, the parties again agree that the corresponding structure for this limitation includes "latches," "springs," and "magnets," as the specification of the '489 Patent clearly links those components to performing the claimed function.  *See* Ex. 1 at 7:50-54.  However, the specification of the '489 Patent further clearly links an "actuator" to performing the claimed function, as the specification expressly states that the claimed "actuator arm" is part of the mechanical linkage (*see id.* at 4:54-56) that is moved between the first and second positions by the "actuator."  *See id.* at 4:49-50 ("An actuator serves to move the mechanical linkage between the first position and the second position.").  Because the actuator arm is part of the mechanical linkage, and an "actuator" is required to move the mechanical linkage, an

---

[3]    Notably, Plaintiff identifies the full claimed function for at least some of the means-plus-function limitations, thereby implicitly acknowledging that this is the proper approach.  *See, e.g.*, Section III.A, *supra*, and Section III.D, *infra*.

"actuator" is necessarily corresponding structure and must be included in the construction of this means-plus-function limitation. *See B. Braun Med.*, 124 F.3d at 1424 ("[A] means-plus-function claim 'shall be construed to cover the corresponding structure…described in the specification.'" (quoting 35 U.S.C. § 112, paragraph 6)); *see also Default Proof*, 412 F.3d at 1298 (explaining that corresponding structure "must include all structure that actually performs the recited function.").

C.      **"means for passing power from said power supply to said substation when said actuator arm is in said first position" (Claim 10)**

| Plaintiff's Proposed Construction | Siemens' Proposed Construction |
|---|---|
| **Function:** "passing power"<br><br>**Structure:** actuator arm, line, bushing, bus, busbar, contactor, conductor, their equivalents, or any combination of them. | **Function:** "passing power from said power supply to said substation when said actuator arm is in said first position"<br><br>**Structure:** the line between the power supply and the actuator arm, the actuator arm, and the line between the substation and the first contactor of the first vacuum bottle, and equivalents thereof. |

The disputes relating to this means-plus-function limitation are again (1) whether the claimed function should be defined to match the function recited in the claim, and (2) whether various components—alone or in *any possible combination*—are clearly linked in the specification of the '489 Patent to the claimed function. As set forth below, Siemens' proposed construction is correct.

With regard to the function, Siemens properly identifies the function explicitly recited in Claim 10—"passing power from said power supply to said substation when said actuator arm is in said first position." By contrast, Plaintiff again eliminates functional requirements explicitly recited in this means-plus-function claim limitation. Plaintiff's position is improper, as it is inconsistent with the controlling authority cited above holding that the proper function is that

which is explicitly recited in the claim (as proposed by Siemens). *See, e.g.*, *Cardiac Pacemakers*, 296 F.3d at 1113 ("It is improper to narrow the scope of the function beyond the claim. It is equally improper to broaden the scope of the claimed function by ignoring clear limitations in the claim language." (internal citations omitted)); *JVW Enters.*, 424 F.3d at 1331 ("First, a court may not construe a means-plus-function limitation 'by adopting a function different from that explicitly recited in the claim.'" (quoting *Micro Chem.*, 194 F.3d at 1258)); *Maxus Strategic Sys.*, 2014 WL 3348607, at \*14 (adopting "the function as directly stated in the claim language"); *GSK Techs.*, 2008 WL 906713, at \*7 (rejecting plaintiff's proposed, truncated function and instead adopting the full claim limitation following the recitation of "means for" as the proper function).

Additionally, Plaintiff's improper truncation of the claimed function would render this claim limitation all but meaningless. Indeed, any electrically-conductive component described in the specification of the '489 Patent could accomplish Plaintiff's proposed function of "passing power," and thus would be corresponding structure under Plaintiff's proposal. As shown above, the functional language of claim 10 is not so broad—it requires passing power from a specific source to a specific destination when the claimed actuator arm is in a specific position. *See* Ex. 1 at Claim 10 ("means for passing power from said power supply to said substation when said actuator arm is in said first position").

Plaintiff's argument that this distinction does not matter to the proper construction of this means-plus-function limitation misses the mark.[4] The patentee in this instance chose to take advantage of means-plus-function claiming, which requires strict compliance with the applicable statue and corresponding case law. *See, e.g.*, *Williamson*, 792 F.3d at 1347 (explaining that means-

---

[4]   During the parties' claim construction meet and confer, counsel for Plaintiff argued that its truncated identification of the claimed function is sufficient because the other limitations of the claim are still required in order to find infringement.

plus-function claims are limited "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof"); *Medtronic*, 248 F.3d at 1311 ("Structure disclosed in the specification is corresponding structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." (citations omitted)). As set forth below, there are meaningful and substantial differences between the structures that are "clearly linked" to carrying out Plaintiff's truncated function on the one hand, and carrying out the full function recited in the claim on the other hand. Thus, Plaintiff's argument that this distinction does not ultimately matter is incorrect, and the Court should therefore adopt the full function recited in claim 10, as proposed by Siemens.

In addition to the function, Siemens' proposed corresponding structure is also the correct construction because it properly identifies the components that are clearly linked to—and are actually capable of performing—the function recited in claim 10. *See Medtronic*, 248 F.3d at 1311; *Default Proof*, 412 F.3d at 1298. Specifically, the '489 Patent states:

> The actuator arm is interconnected to a supply of power. In particular, a power supply is connected by a line to the actuator arm. A substation is connected by a line to the first contactor of the first vacuum bottle. Power is passed from the power supply to the substation when the actuator arm is in the first position.

Ex. 1 at 5:10-15; *see also id.* at 6:15-18 ("Ultimately, the energy is transmitted along line 68 to the circuit breaker 44. When the circuit breaker 44 is suitably closed, then the energy will be delivered along line 70 to the substation 72."). With reference to the ***full*** function above, Siemens' proposed corresponding structure is the only one that is clearly linked to the function recited in the claim.

By contrast, Plaintiff proposes that any one of seven different components, or "any combination of them," constitutes the corresponding structure for this means-plus-function term. This equates to over 5,000 possible combinations of components—an unwieldy proposition—and one that ignores the fact that only the structure from the specification that is "clearly linked" to the

claimed function can qualify as "corresponding structure."  *See Medtronic*, 248 F.3d at 1311.  Not surprisingly, there is no disclosure in the (rather brief) specification of the '489 Patent that "clearly links" the over 5,000 possible combinations of components identified by Plaintiff to accomplishing the full function recited in the claim.

Moreover, there can be no legitimate dispute that the individual components identified by Plaintiff as the corresponding structure for this means-plus-function limitation cannot ***by themselves*** perform the function recited in the claim.  For example, the actuator arm by itself is not capable of performing the function of "passing power from said power supply to said substation when said actuator arm is in said first position."  Similarly, a line, a bushing, a bus, a busbar, a contactor, or a conductor are each incapable of performing the claimed function by themselves.  Simply put, Plaintiff's overly broad identification of structure and failure to identify any particular combinations of the identified structural components that can perform the claimed function is improper.

Plaintiff's proposed structure also injects needless ambiguity.  For example, Plaintiff's construction includes "line" and "contactor," both in isolation and in combination.  Yet claim 10 (and claim 7, from which claim 10 depends) already recites two different "lines" and four different "contactors."  Plaintiff's proposal fails to specify which line(s) and contactor(s) from the specification are to be included in Plaintiff's corresponding structure, and how those components differ from (or are the same as) the components that are already claimed.  Given these issues, the Court should reject Plaintiff's proposed function and corresponding structure for this means-plus-function limitation.

- 12 -

D. **"means for mechanically and selectively connecting the contactor of the bus to the contactor of the circuit and for connecting the contactor of the bus to the contactor for the line" (Claim 17)**

| Plaintiff's Proposed Construction | Siemens' Proposed Construction |
|---|---|
| **Function:** "mechanically and selectively connecting the contactor of the bus to the contactor of the circuit and for connecting the contactor of the bus to the contactor for the line" | **Function:** "mechanically and selectively connecting the contactor of the bus to the contactor of the circuit and for connecting the contactor of the bus to the contactor for the line" |
| **Structure:** latches, springs, magnets, their equivalents, or any combination of them, and an actuator arm or its equivalent. | **Structure:** an actuator, latches, springs, or magnets, and equivalents thereof. |

The Parties agree on the function for this means-plus-function limitation. The Parties disagree, however, on whether an "actuator" (as proposed by Siemens) or an "actuator arm" (as proposed by Plaintiff) are clearly linked to the claimed function, and therefore are corresponding structure.

Siemens properly includes an "actuator" in its proposed structure because the '489 Patent clearly links an actuator to the claimed function through its reference to an "actuator" moving the mechanical linkage/actuator arm between the first and second positions where the claimed contactor pairs are interconnected. *See, e.g.*, Ex. 1 at 4:49-50 ("[a]n actuator serves to move the mechanical linkage between the first position and the second position."), 4:58-32 ("The pair of contactors of the first vacuum bottle being electrically connected together when in the first position…. The pair of contactors of the second vacuum bottle are electrically connected together in the second position."). The arrangement of the contactors in these "first" and "second" positions is analogous to that recited in this means-plus-function limitation. That is, this means-plus-function limitation recites the ability to "mechanically and selectively" move between a first

position, "connecting the contactor of the bus to the contactor of the circuit," and a second position, "connecting the contactor of the bus to the contactor for the line."

Furthermore, the claimed function requires that the connection be made "mechanically and selectively." This requirement indicates the method of making the connection and the selection made by the relevant structural components. That is, the term "mechanically" refers to the nature of the actuating mechanism (*i.e.*, it is mechanical and not, for example, electrical), while the term "selectively" refers to a choice between the two positions recited in the claim—namely, either connecting the contactor of the bus to the contactor of the circuit or contacting the contactor of the bus to the contactor of the line. The proper structure therefore includes those structures that impart motion within the circuit breaker to make (and break) the claimed connections between the respective pairs of contactors, which includes an "actuator."

Plaintiff's inclusion of an "actuator arm," to the contrary, is incorrect because the patent specification does not clearly link such a component to the claimed function. Rather, the specification makes clear that the "actuator arm" does not itself cause any movement; instead, the shift from the first position to the second position is achieved by an "actuator" or by "latches, springs, magnets, or other devices." *See id.* at 4:49-50 ("An actuator serves to move the mechanical linkage between the first position and the second position."),[5] 7:50-54 ("A variety of techniques can be utilized for moving the actuator arm 120 between the first and second position. For example, latches, springs, magnets, or other devices can be employed so as to instantaneously shift the actuator arm 120 between the first and second positions.").

---

[5]    As explained above, the '489 Patent discloses that the "mechanical linkage" includes the "actuator arm." *See* Ex. 1 at 4:54-56 ("The mechanical linkage comprises an actuator arm having the other of the pair of contactors of the first vacuum bottle electrically connected thereto.").

Plaintiff's proposal would also render the "circuit breaker" already recited in the claim all but meaningless. Specifically, claim 17 requires a "circuit breaker" that is interconnected between the respective pairs of contactors in the first and second vacuum bottles. Thus, consistent with the plain language of the claim, and consistent with the ordinary meaning of a "circuit breaker," the claimed "circuit breaker" includes the components that make or break the connection between the claimed contactors—which includes the actuator arm and the mechanism for moving the actuator arm. *See, e.g.*, Ex. 1 at 4:54-58, 7:50-54.

Claim 17 also makes clear that the "means for mechanically and selectively connecting" is a subset of the "circuit breaker" (*i.e.*, "circuit breaker *having* means for mechanically and selectively connecting…"). As such, the "circuit breaker" and the claimed "means" cannot be the same thing. Under the proper construction (as proposed by Siemens), they are not the same thing— the claimed "means" is the structure that actually moves the components of the "circuit breaker," while the broader "circuit breaker" comprises additional components, including the actuator arm. In contrast, if the actuator arm is part of the "means for mechanically and selectively connecting," as proposed by Plaintiff, the prior recitation of "a circuit beaker [sic] interconnected between" various contactors would be rendered superfluous.

For all these reasons, including principally because it is not clearly linked to the function recited in the claim, an "actuator arm" should not be included in the corresponding structure.

### E.   "said means for connecting the contactor of said bus to the contactor for said line occurring in a time of less than 16 milliseconds" (Claim 20)

| Plaintiff's Proposed Construction | Siemens' Proposed Construction |
|---|---|
| Not indefinite | Indefinite under 35 U.S.C. § 112, ¶ 2 |

Claim 20 of the '489 Patent is indefinite because it improperly mixes a system claim with a method step. *See IPXL*, 430 F.3d at 1383-84; *In re Katz Interactive Call Processing Patent*

*Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011). Specifically, independent claim 17 is directed to "[a] *system* for passing energy from a power supply to a substation…" Ex. 1 at Claim 17 (emphasis added). The system of claim 17 includes "means for *mechanically and selectively connecting* the contactor of the bus to the contactor of the circuit and for connecting *the contactor of the bus to the contactor for the line*." *Id.* (emphasis added).

Claim 20 (which depends from claim 17) further requires a limitation that is not part of the "means for mechanically and selectively connecting…" system limitation above; namely, that the connection *actually occur* "in a time of less than 16 milliseconds." *Id.* at Claim 20. As such, claim 20 requires a method step be performed in a system claim. Put differently, claim 17 requires a structure that *is capable* of "mechanically and selectively" connecting two different combinations of contactors, while claim 20 requires that one of those connections *is actually performed* in "less than 16 milliseconds." A claim such as this that mixes two separate statutory classes of invention "is not sufficiently precise to provide competitors with an accurate determination of the metes and bounds of protection and is ambiguous" under 35 U.S.C. § 112, paragraph 2. *IPXL*, 430 F.3d at 1384 (citing *Ex parte Lyell*, 17 USPQ2d 1548 (1990)); *see also* MPEP § 2173.05(p)(II) (1999) ("A single claim which claims both an apparatus and the method steps of using the apparatus is indefinite under 35 U.S.C. § 112, second paragraph.").

Because Claim 20 impermissibly mixes a system claim with a method step, the claim is indefinite. *See IPXL*, 430 F.3d at 1383-84; *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011).

Dated:  October 6, 2021

Respectfully submitted,

*/s/ Tyler T. VanHoutan*
Tyler T. VanHoutan
Texas Bar No. 24033290
Eric S. Schlichter
Texas Bar No. 24007994
**McGuireWoods LLP**
600 Travis St., Suite 7500
Houston, TX 77002
Tel: (713) 571-9191
Fax: (713) 571-9652
tvanhoutan@mcguirewoods.com
eschlichter@mcguirewoods.com

Matthew W. Cornelia
TX State Bar No. 24097534
**McGuireWoods LLP**
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel: (214) 932-6400
Fax: (214) 932-6499
mcornelia@mcguirewoods.com

*Counsel for Defendants*
*Siemens Corporation and Siemens Industry, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was

served on all counsel of record via electronic mail on October 6, 2021.

*/s/ Tyler T. VanHoutan*
Tyler T. VanHoutan

- 17 -